FILED'10 JUN 22 15:27USDC-ORM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

SCOTT M. NIEMAN,

Plaintiff,

v.

INTERSTATE DISTRIBUTOR CO.,

Defendant.

Civ. No. 09-3102-PA

**OPINION AND ORDER**

---

**PANNER, J.**

Plaintiff Scott Nieman brings this breach of contract action against defendant Interstate Distributor Co. (IDC), a trucking company. IDC counterclaims for breach of contract.

The parties have filed cross-motions for summary judgment. I grant IDC's motion and deny Nieman's motion. I award IDC $60,000 in damages.

**BACKGROUND**

In January 2008, Nieman was severely injured when a truck

owned by C&A Trucking crossed the center line on a bridge and collided head-on with the pick-up truck Nieman was driving. A few minutes later, a second truck, owned by IDC, rear-ended Nieman's pick-up. The second collision was minor.

Nieman, represented by attorney David deVilleneuve, brought a personal injury action in state court against C&A Trucking (C&A) and IDC. C&A was represented by Larry Brown. IDC was represented by Brian Williams.

In January 2009, Williams suggested that Nieman enter into a Mary Carter agreement with IDC. "A 'Mary Carter agreement' is an agreement between a plaintiff and some, but fewer than all, defendants, under which settling parties limit financial responsibility of settling defendants, usually in inverse ratio to any recovery that the plaintiff is able to make against the nonsettling defendants." Mead v. Legacy Health Sys., 231 Or. App. 451, 453 n.1, 220 P.3d 118, 119 n.1 (2009) (citing Booth v. Mary Carter Paint Co., 202 So. 2d 8 (Fla. Dist. Ct. App. 1967)). Williams sent deVilleneuve a proposed Mary Carter agreement, which provided that IDC would pay Nieman between $100,000 and $250,000 if the judgment was less than $1 million. If Nieman obtained a judgment or settlement of more than $1 million against C&A, Nieman would "use his best efforts to collect, including by way of pursuing a bad faith claim against the insurer for C&A and Linares[1]." If Nieman recovered $1 million or more, he was

required to reimburse IDC "25% of that amount . . . until the $100,000 paid by IDC is reimbursed in full, without any interest." Nieman rejected the proposed Mary Carter agreement because he considered the $100,000 minimum recovery too low.

The parties met for further negotiations in April 2009. After the parties agreed on terms, Williams drafted the Mary Carter agreement at issue here. The agreement increased the amount that IDC would pay Nieman between $300,000 and $500,000 if the judgment was $700,000 or less. The parties agreed that Williams would be lead counsel in any bad faith lawsuit against C&A's insurer because Williams had more experience litigating such cases.

The written agreement provided for payments to Nieman:

> IDC shall pay Neiman[2] $300,000 in equal installments over six months starting June 17, 2009 without interest. In the event that there is a judgment for Nieman against C&A and Linares at or above $700,000, then IDC owes Neiman nothing further. In the event that Neiman, despite using his best efforts, is unable to obtain a judgment against C&A and Linares or at least $700,000, then IDC will pay Neiman up to an additional $200,000 to bring Neiman to the same position he would have been in had he obtained a judgment for $700,000 against C&A and Linares. Thus, for example, if Neiman obtains a judgment against C&A and Linares for $500,000, IDC would owe another $200,000; and if Neiman obtains a judgment against C&A and Linares for $400,000, IDC would owe another $200,000. Under no circumstance would IDC owe more than an additional $200,000. Under no circumstance would IDC pay Neiman more than $500,000 total, which would consist of the initial $300,000 plus up to an additional $200,000 as outlined above. Neiman hereby agrees not to settle with C&A and Linares for less than $750,000.

The provision at issue here, Nieman's obligation to reimburse IDC, states:

> C&A and Linares have a single limit liability insurance policy with a $750,000 policy limit. In the event that Neiman obtains a settlement or judgment for more than $750,000 against C&A and Linares, then Neiman shall use his best efforts to collect, including by way of pursuing a bad faith claim against the insurer for C&A and Linares. If there is a bad faith claim against the insurer for C&A and Linares such that more than $750,000 is collected, that claim will be pursued jointly by IDC and Neiman and their respective counsel, with the Hitt Hiller Monfils Williams LLP firm taking the lead role and performing substantially all of the legal work on that claim. That work will be performed at an hourly rate by Hitt Hiller Monfils Williams LLP with legal fees and any costs to be paid by IDC. <u>If money is recovered in a bad faith lawsuit</u>, the proceeds will be distributed as follows: First, IDC will be reimbursed for all legal fees and expenses associated with pursuing the bad faith claim. Second, any net recovery after fees and costs are deducted will be divided equally between IDC and Neiman until IDC is fully repaid whatever sums it paid or owes to Neiman under the above paragraphs (which will be between $300,000 and $500,000). Third, after IDC has been reimbursed for all expenses associated with the litigation and after the amount of its settlement with Neiman and [sic] been repaid through the bad faith claim, any remaining money belongs to Neiman.

(Emphasis added.) Williams states, "In drafting the [Mary Carter agreement], I made a unilateral mistake by using the word 'lawsuit' instead of 'claim.'" Williams Aff. at 3. It is undisputed that during the parties' negotiations, Williams and deVilleneuve never discussed any distinction between the words "claim" and "lawsuit." They also did not discuss whether Nieman would be required to reimburse IDC only if a bad faith lawsuit was filed.

The parties signed the Mary Carter agreement in May 2009. IDC timely paid Nieman the first installment of $60,000.

While the jury was deliberating in June 2009, C&A's attorney Larry Brown offered plaintiff $1.1 million to settle, apparently the first time C&A offered more than the policy limit. DeVilleneuve told Brown that under the Mary Carter agreement, a settlement over $750,000 would require that Nieman reimburse IDC. According to deVilleneuve, Brown responded, "Maybe if the settlement happens before [a bad faith lawsuit is filed], you don't have to pay it back according to the reading of the agreement." DeVilleneuve Dep. at 51. (Brown knew the terms of the Mary Carter agreement because Oregon law required that Nieman disclose the agreement to other defendants. Or. Rev. Stat. § 31.815(2).) Before talking to Brown, DeVilleneuve had not thought the Mary Carter agreement could be interpreted the way Brown suggested.

DeVilleneuve told Williams about Brown's interpretation. Williams said Brown's interpretation was contrary to the parties' agreement.

DeVilleneuve talked to Nieman about Brown's settlement offer and interpretation of the agreement, advising Nieman that a judge would likely agree with Williams's interpretation of the agreement. DeVilleneuve reasoned that a judge looking at the agreement would think, "Well, it's the concept of bad faith

money. And that a judge would probably, more likely than not, say that [i.e., a settlement with C&A for more than the policy limit] is bad faith money." DeVilleneuve Dep. at 55. Nieman stated at his deposition that he understood the reimbursement to IDC to be compensation for Williams's work bringing in a bad faith lawsuit against C&A's insurer, and that if no lawsuit was filed, no reimbursement would be owed IDC. Nieman also stated that he saw no difference between a claim and a lawsuit.

The jury awarded Nieman damages of $2,708,397.22. The jury found C&A Trucking 99% negligent and IDC 1% negligent.

C&A filed a notice of appeal. No bad faith lawsuit was filed against C&A's insurer, CIG.

In October 2009, Nieman settled with C&A and CIG. CIG agreed to pay plaintiff $2,362,500. In return, Nieman assigned to CIG the right to recover any money due Nieman from IDC under the Mary Carter agreement. CIG agreed to "hold Nieman harmless for any sums up to $60,000 paid by IDC" under the Mary Carter agreement. Wray Aff. Ex. 4, at 2.

**STANDARDS**

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material

fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**DISCUSSION**

The parties dispute the construction of the phrase, "If money is recovered in a bad faith lawsuit." Nieman contends that the word "lawsuit" means that he had no duty to reimburse IDC for a recovery greater than C&A's policy limit unless a bad faith lawsuit was filed. IDC, noting that Williams made a unilateral mistake in using the word "lawsuit," contends the parties agreed any recovery over the policy limit would trigger Nieman's duty to reimburse IDC, regardless of whether a lawsuit was filed.

The interpretation of a contract is a question of law for the court. See Fogg v. Wart, 2006 WL 3716745, at *5 (D. Or. 2006) (citing Anderson v. Jensen Racing, Inc., 324 Or 570, 575, 931 P.2d 763, 765 (1997)). "To interpret a disputed contractual provision, the court must determine whether the provision is ambiguous." Id. (citing Nixon v. Cascade Health Services, Inc., 205 Or. App. 232, 238, 134 P.3d 1027, 1030 (2006)). A contract is ambiguous if it is "susceptible to more than one reasonable interpretation." Id.

I conclude that the reimbursement provision of the Mary Carter agreement is ambiguous. The paragraph defining Nieman's duty to reimburse IDC uses the word "lawsuit" only once. The

paragraph refers several times to a "bad faith claim," e.g.:

> "In the event that Neiman obtains a settlement or judgment for more than $750,000 against C&A and Linares, then Neiman shall use his best efforts to collect, including by way of <u>pursuing a bad faith claim</u> against the insurer for C&A and Linares."
>
> "<u>If there is a bad faith claim against the insurer for C&A and Linares such that more than $750,000 is collected</u>, that claim will be pursued jointly by IDC and Neiman and their respective counsel . . . ."
>
> "IDC will be reimbursed for all legal fees and expenses associated with pursuing <u>the bad faith claim</u>."
>
> after IDC has "been repaid through <u>the bad faith claim</u>, any remaining money belongs to Neiman."

The agreement uses the words "claim" and "lawsuit" interchangeably. In context, the disputed provision is ambiguous on whether a bad faith lawsuit must be filed to trigger Nieman's obligation to reimburse IDC.

When interpreting an ambiguous provision, the court may consider extrinsic evidence about the circumstances under which the agreement was made. <u>See</u> <u>Fogg</u>, at *6 (court may consider "the circumstances under which it was made, including the situation of the subject and of the parties" so "the judge is placed in the position of those whose language the judge is interpreting") (citation omitted). Here, it is undisputed that Williams made a simple unilateral mistake in using the word "lawsuit" rather than "claim." It is also undisputed that during the parties' negotiations before executing the Mary Carter agreement, Williams and deVilleneuve never discussed whether there was a difference

between a "bad faith claim" and a "bad faith lawsuit." DeVilleneuve admits that until he talked to C&A's attorney, he had not even considered the interpretation of the agreement now asserted by Nieman. Nieman's proposed interpretation depends on a distinction between a "bad faith lawsuit" and a "bad faith claim" that the parties did not even discuss, much less agree on. I conclude that the parties agreed Nieman would reimburse IDC if Nieman recovered more than $750,000 from C&A's insurer, regardless of whether a bad faith lawsuit was filed.

The proper remedy is reformation of the agreement to replace the word "lawsuit" with "claim." Reformation "'is available when the parties, having reached an agreement and having then attempted to reduce it to writing, fail to express it correctly in the writing.'" Pioneer Resources, LLC v. D.R. Johnson Lumber Co., 187 Or. App. 341, 370, 68 P.3d 233, 250 (2003) (quoting Restatement (Second) of Contracts § 155 comment a (1981)).

> A party seeking reformation of a contract has the burden to establish the following elements by clear and convincing evidence: "(1) that there was an antecedent agreement to which the contract can be reformed; (2) that there was a mutual mistake or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party; and (3) that the party seeking reformation was not guilty of gross negligence."

Aero Sales, Inc. v. City of Salem, 200 Or. App. 194, 196, 114 P.3d 510, 511 (2005) (quoting Jensen v. Miller, 280 Or. 225, 228-29, 570 P.2d 375, 377 (1977) (citations omitted)).

IDC has shown by clear and convincing evidence that the parties reached an agreement in April 2009; Williams made a unilateral error in drafting the agreement; Nieman acted inequitably by attempting to exploit a clerical error to avoid his obligation to reimburse IDC; and IDC's error was not gross negligence. IDC is entitled to recover the $60,000 payment it made to Nieman.

**CONCLUSION**

Defendant's motion for summary judgment (#33) is granted. Plaintiff's motion for summary judgment (#6) is denied. Defendant is awarded damages of $60,000.

IT IS SO ORDERED.

DATED this 21 day of June, 2010.

OWEN M. PANNER

1 Juan Rojas Linares was the truck driver for C&A.
2 The agreement usually misspells Nieman's name.